T.C. Summary Opinion 2012-115

UNITED STATES TAX COURT

JAMES TIMOTHY HARRIS AND
LATONYA MECHAEL HARRIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10104-11S.                          Filed November 26, 2012.

James Timothy Harris and LaTonya Mechael Harris, pro sese.

<u>Amber B. Martin</u>, for respondent.

SUMMARY OPINION

WELLS, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. The issue we must decide is whether petitioners are entitled to the first-time homebuyer credit (FTHBC) pursuant to section 36.

## Background

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of facts are incorporated in this opinion by reference and are found accordingly. Petitioners are husband and wife who resided in Mississippi at the time they filed their petition.

During 2000, petitioner husband moved into a St. Louis, Missouri, residence (St. Louis property) owned by Catherine Barton. On August 10, 2000, Ms. Barton executed a quitclaim deed in favor of petitioner husband and herself for the St. Louis property in connection with a refinancing of the mortgage. From 2000 to 2008 Ms. Barton maintained her principal residence at the St. Louis property. Petitioner husband and Ms. Barton had a son, K.J.H., who also lived at the St. Louis property as his principal residence from his birth to 2008.

---

[1](...continued)
Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

In either January or February 2001, petitioner husband moved to Gadsden, Alabama, because of the requirements of his work. In May 2001, petitioner husband married Ms. Barton, who continued to reside in Missouri at the St. Louis property.

During 2004, petitioner husband moved to Memphis, Tennessee, because of his work for the Job Corps program, and as of July 2004 he began to reside in Southaven, Mississippi (Southaven residence). At the time of petitioner husband's move, he and Ms. Barton were already separated. After his move to Memphis, petitioner husband periodically returned to St. Louis to visit K.J.H. and provided financial support for his family. However, petitioner husband neither provided Ms. Barton with financial support to maintain or repair the St. Louis property nor received mail at the St. Louis property. On April 29, 2005, petitioner husband applied for a driver's license from the State of Mississippi listing the Southaven residence as his home address.

Petitioner husband and Ms. Barton jointly filed Forms 1040, U.S. Individual Income Tax Return, for their 2005 and 2006 tax years. For their 2005 and 2006 tax years, petitioner husband and Ms. Barton's joint returns listed the St. Louis property as their home address and showed deductions for home mortgage interest and real estate taxes associated with the St. Louis property. Petitioner husband and Ms.

Barton claimed a refund due to overpayment of taxes for their 2005 and 2006 tax years. Petitioner husband did not himself receive any refunded taxes, and the record does not disclose whether Ms. Barton received any refunded taxes. During 2005, petitioner husband received a Form W-2, Wage and Tax Statement, listing the Southaven residence as his address. During 2006, petitioner husband received a Form W-2 listing the St. Louis property as his address.

Petitioner husband and Ms. Barton signed the Final Decree of Divorce and Property Settlement Agreement (divorce decree) on February 16, 2007. The Chancery Court of DeSoto County, Mississippi, filed the divorce decree on May 23, 2007. The divorce decree granted ownership of the St. Louis property to Ms. Barton. However, record title to the St. Louis property continues in the names of both Ms. Barton and petitioner husband.

Petitioners married on August 25, 2007. On April 18, 2008, petitioner wife purchased a residence in Olive Branch, Mississippi (Olive Branch property). Petitioner wife did not own any residence at any time from April 2005 until the purchase of the Olive Branch property. After the purchase, petitioners moved into and continue to live at the Olive Branch property. For their 2008 tax year, petitioners filed a Form 1040 with the filing status married filing jointly. On their 2008 Form 1040, petitioners claimed a section 36 credit of $7,500.

## Discussion

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a)(1) provides an exception that shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if: (1) the taxpayer introduces credible evidence with respect to that issue; and (2) the taxpayer satisfies certain other conditions, including substantiation of any item and cooperation with the Government's requests for witnesses, documents, other information, and meetings. Sec. 7491(a)(2); see also Rule 142(a)(2). The taxpayer bears the burden of proving that the taxpayer has met the requirements of section 7491(a). Rolfs v. Commissioner, 135 T.C. 471, 483 (2010), aff'd, 668 F.3d 888 (7th Cir. 2012). Because we decide the factual issues in the instant case on the preponderance of the evidence, the allocation of the burden of proof is immaterial. See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008).

Section 36(a) allows a credit for a first-time homebuyer of a principal residence. A first-time homebuyer is "any individual if such individual (and if married, such individual's spouse) had no present ownership interest in a principal

residence during the 3-year period ending on the date of the purchase of the principal residence to which this section applies." Sec. 36(c)(1).

Petitioners are eligible as first-time homebuyers if neither petitioner wife nor petitioner husband had an ownership interest in a principal residence after April 17, 2005, and before April 18, 2008. See Foster v. Commissioner, 138 T.C. 51, 52-53 (2012). For purposes of the FTHBC, section 36(c)(2) provides that the term "principal residence" has the same meaning as in section 121. Whether a taxpayer uses a property as his or her principal residence depends upon all the facts and circumstances. See sec. 1.121-1(b)(2), Income Tax Regs. Ordinarily, the taxpayer's principal residence is the property the taxpayer uses during most of the year. See id. Section 1.121-1(b)(2), Income Tax Regs., provides:

> (2) Principal residence. * * * In addition to the taxpayer's use of the property, relevant factors in determining a taxpayer's principal residence, include, but are not limited to--
>
> (i) The taxpayer's place of employment;
>
> (ii) The principal place of abode of the taxpayer's family members;
>
> (iii) The address listed on the taxpayer's federal and state tax returns, driver's license, automobile registration, and voter registration card;
>
> (iv) The taxpayer's mailing address for bills and correspondence;

    (v) The location of the taxpayer's banks; and

    (vi) The location of religious organizations and recreational
clubs with which the taxpayer is affiliated.

Respondent contends that petitioner husband was not a first-time homebuyer because, after April 17, 2005, petitioner husband held an ownership interest in the St. Louis property and used the St. Louis property as his principal residence.[2] Petitioners do not dispute that petitioner husband had record title to the St. Louis property in his joint name with Ms. Barton at least until his divorce from Ms. Barton in 2007, but contend that the St. Louis property ceased to be his principal residence when he moved to the Southaven residence, which was before April 18, 2005.

In 2004, petitioner husband moved to the Memphis, Tennessee, area so that he could continue his work for the Job Corps program in Memphis. As of July 2004, petitioner husband began to reside in the Memphis suburb of Southaven,

---

[2]We note that sec. 36(c)(6) expands the scope of the FTHBC by making it available to individuals who have owned and lived in the same residence for at least five consecutive years during the eight years before purchasing a new principal residence. According to respondent, it is likely that petitioner husband would have qualified for the FTHBC under sec. 36(c)(6). However, para. (6) was not enacted until 2009 and does not apply for the 2008 tax year. See Worker, Homeownership, and Business Assistance Act of 2009, Pub. L. No. 111-92, sec. 11(b), 123 Stat. at 2989. Consequently, petitioners cannot avail themselves of sec. 36(c)(6).

Mississippi, and no longer resided at the St. Louis property. Petitioner husband only periodically returned to St. Louis, primarily to visit his son, K.J.H. and not Ms. Barton, from whom petitioner husband separated when he moved and whom he ultimately divorced in 2007. Petitioner husband provided Ms. Barton with financial support for K.J.H. but not for the upkeep of the St. Louis property. Additionally, after moving to the Memphis area, petitioner husband ceased to receive mail at the St. Louis property and listed his address as the Southaven residence on his application for a Mississippi driver's license. Consequently, petitioner husband worked in Memphis, limited his family involvement in St. Louis only to interactions with K.J.H., changed his mailing address from the St. Louis property to the Southaven residence, and received a Mississippi driver's license listing his address as the Southaven residence. The evidence, which includes his credible testimony, indicates that petitioner husband stopped residing at the St. Louis property when he moved to the Southaven residence during 2004. Accordingly, we conclude that the St. Louis property ceased to be petitioner husband's principal residence before April 18, 2005.

Respondent contends that petitioner husband's Forms 1040 for his 2005 and 2006 tax years prove that the St. Louis property was his principal residence during

those years. Respondent points to the fact that petitioner husband and Ms. Barton jointly filed Forms 1040 for their 2005 and 2006 tax years, and on both Forms 1040 they listed the St. Louis property as their home address and deducted home mortgage interest[3] and real estate taxes associated with the St. Louis property. However, at trial petitioner husband testified that Ms. Barton prepared the Forms 1040 and that he signed them without questioning her because he wanted "to get out from under that entire umbrella with as little issue of problems as possible." We accept petitioner husband's testimony as credible. It is consistent with other facts that persuade us that the St. Louis property was not his actual residence when he signed the return. Petitioner husband and Ms. Barton did, in fact, face marital problems, as evidenced by their separation in 2004 and ultimate divorce in 2007. Furthermore, although petitioner husband and Ms. Barton claimed a refund due to overpayment of taxes for their 2005 and 2006 tax years, he did not receive any of

---

[3]Respondent appears to be arguing that petitioners' position that they qualify for the FTHBC is inconsistent with petitioner husband and Ms. Barton's position on their 2005 and 2006 joint returns that the St. Louis property was treated as a principal residence for purposes of the interest deduction under sec. 163(h). Respondent has not convinced us that those positions are necessarily inconsistent. In particular, respondent has failed to address the effect of the cross- reference in sec. 163(h)(4)(A)(i)(I) to sec. 121, inasmuch as sec. 121(d)(1) might suggest that Ms. Barton was entitled to claim the St. Louis property as her principal residence with regard to her sole use of that property for purposes of claiming an interest deduction under sec. 163(h) on her joint return with petitioner husband.

the refund payment, limiting his personal benefit from the deductions. Additionally, petitioner husband's Form W-2 for his 2005 tax year listed his address at the Southaven residence, indicating that he regarded the Southaven residence to be his residence for Federal tax purposes.[4]

Respondent also points to petitioner husband's continued record ownership of the St. Louis property, despite the separation and divorce from Ms. Barton, as evidence that it was his principal residence. During 2007, when the divorce decree granted ownership of the St. Louis property to Ms. Barton, record title to the St. Louis property continued to be in the names of both Ms. Barton and petitioner husband. Petitioner husband contends that he allowed his name to remain on the deed to the St. Louis property to accommodate Ms. Barton so that she would not face the risk of losing the St. Louis property in a potential refinancing, a result that would force additional transition and stress upon K.J.H., who was already in a delicate situation due to his parents' separation and divorce. We are persuaded by petitioner husband's testimony that he intended to financially support his son K.J.H.

---

[4]We are aware that during 2006 petitioner husband received a Form W-2 listing the St. Louis property as his address. However, as petitioner husband testified at trial, we believe that to be an error because the previous Form W-2 for 2005 listed his correct address at the Southaven residence and he received no mail correspondence at the St. Louis property after he moved during 2004.

when he decided not to take any action to remove his name from the record title on the St. Louis property.

On the basis of the foregoing, we hold that the St. Louis property was not petitioner husband's principal residence after April 17, 2005. Therefore, pursuant to section 36(c)(1), petitioners qualify as first-time homebuyers that are entitled to the FTHBC.

In reaching the foregoing holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for petitioners</u>.